# Missouri Court of Appeals
## Southern District
### Division One


| | | |
|---|---|---|
| ROY DALE FRANKLIN, | ) | |
| | ) | |
| Claimant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD36898 |
| | ) | |
| MITCHELL MILL SYSTEMS USA, INC., | ) | **Filed:  May 27, 2021** |
| | ) | |
| Employer-Appellant, | ) | |
| | ) | |
| ACCIDENT FUND INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Insurer-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI AS CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent-Respondent. | ) | |

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**AFFIRMED**

Mitchell Mill Systems USA, Inc. ("Employer") and Accident Fund Insurance

Company of America ("Insurer") (collectively, "Appellants"), appeal the decision of the

Labor and Industrial Relations Commission ("the Commission") which determined that

1

Roy Dale Franklin's ("Employee's") permanent and total disability resulted from his last workplace injury alone, rather than from a combination of his last injury and his pre-existing disabilities. The result of the Commission's decision is that Employee is not entitled to an award of permanent total disability benefits from the State Treasurer, as custodian for the Second Injury Fund ("SIF"). Appellants claim (1) that the finding that Employee is permanently and totally disabled as a result of the final injury in isolation is not supported by the facts found by the Commission, and (2) the award is not supported by sufficient competent and substantial evidence. Specifically, in both points, Appellants claim the Commission based its finding on the opinions of two experts, alleging both experts subsequently changed their opinions regarding the cause of Employee's permanent total disability. We find no error and affirm the decision of the Commission.

**Standard of Review**

> The Commission's decision will be affirmed unless: "(1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *White v. ConAgra Packaged Foods, LLC*, 535 S.W.3d 336, 338 (Mo. banc 2017); § 287.495.1, RSMo 2000.[] "Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." § 287.495.1, RSMo 2000. In addition to findings of fact, this Court also defers to the Commission's determinations as to credibility of witnesses and the weight given to conflicting evidence. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015).

*Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020) (footnote omitted).

**Facts**

Employee worked as a welder with Employer from 2006-2014.[1] Employee worked heavy labor fifty to fifty-eight hours a week as a welder for Employer which included frequently lifting fifty or more pounds, carrying, squatting, and kneeling. Employee's job with Employer involved more physical work than his previous job, and in 2009, Employee had to seek medical care for his lower back. In July 2011, Employee had back surgery and returned to work after six weeks.

After surgery Employee experienced less pain with his back, but he began experiencing more problems with his wrists which lead to bilateral carpal tunnel releases in 2012 (right wrist) and 2013 (left wrist).[2] Employee did not pursue a worker's compensation claim for his first back injury, but did file a claim for "bilateral upper extremities" (resulting in carpal tunnel syndrome) attributing the cause to vibration incurred while welding. After the wrist releases, Employee's wrist issues improved but Employee continued to have pain, tingling and loss of grip strength.

Over time, due to his back condition, Employee requested Employer excuse him from certain types of jobs, like welding derricks, but Employer refused his request. Employee's sciatica returned and his back condition worsened while Employee welded derricks from 2013-2014. Eventually, Employee was bedridden after working an eight-hour shift for Employer on Saturday, April 12, 2014, at the end of a fifty-eight-hour work week. On Monday, April 14, 2014, Employee reported to work, but advised Employer

---

[1] Initially, Employee began working for General Steel in 2006 and General Steel became Mitchell Mill Systems USA, Inc. in July 2010. He worked continuously from 2006 until 2014, except for several layoffs over the course of those years when work was slow.

[2] At the same time that Employee was being treated for his back pain in 2011, he was being treated for issues with both of his hands and wrists.

that he could not work due to pain and he was sent to Freeman OccuMed.[3] For a short period of time, Employee was released by the physician to perform light duty restricted work (no lifting, pushing, pulling or carrying more than ten pounds), but Employee never worked as a welder again.

Employee underwent a course of conservative treatment with Freeman OccuMed, received therapy and an epidural steroid injection with Dr. Woodward, then ultimately received a referral to Dr. Cunningham for surgery. Employee's treating authorized provider, Dr. Woodward, noted:

> The patient's medical history and medical record review are consistent and indicate a significant acute episode of more severe lumbar spine pain and associated left >right [sic] LE pain and sensory symptoms. Today patient reported a specific time at work of increased lumbar spine pain occurring about April 13, 2014 which would be just prior to the initial occupational medicine clinic office note.
> The prevailing cause of the patient's current moderate/severe lumbosacral pain and left LE radiculopathy including left L4 symptoms would be the work duty physical activities he performed in mid-April 2014. These work duties are in excess of routine activities of daily living. Also, the most recent MRI scan of patient's lumbar spine indicate a focal acute soft disc herniation with a focal disc extrusion impinging the left L4 nerve root which is concordant with his current lumbar spine pain condition. Focal disc extrusions are typically the result of an acute physical injury to the lumbar spine and frequently due to bending/stooping/twisting/lifting activities such as reported by patient while working in mid-April 2014.
> The patient does also have a pre-existing postop lumbar spine condition that contributes to his current condition, but the patient was working for several years with this postop spine condition and with no medical documentation that he had any significant physical impairment directly related to this pre-existing spine condition.
> The patient has not yet reached MMI [maximum medical improvement] for the April 2014 work injury condition.

Employee had surgery in October 2014 in an effort to relieve and cure the effects of Employee's April 2014 work injury, but the surgery did not relieve Employee's pain

---

[3] Originally, Employee saw Dr. Estep at Freeman OccuMed, then Dr. Woodward at Springfield Neurological and Spine Institute, who referred Employee to Dr. Cunningham.

symptoms. Employee had returned to full-time heavy labor employment after each of his six (6) prior major surgeries from injuries prior to his employment with Employer, but Employee was unable to return to employment after the April 2014 injury. Employee's wife assisted him in applying for Social Security Disability and he was approved on the initial application.

Employee filed a claim for occupational disease based on a progressive injury to Employee's lumbar spine with an onset of April 12, 2014. On May 28, 2015, an independent medical evaluation of Employee was conducted by Dr. P. Brent Koprivica ("Dr. Koprivica") at the request of Employee's attorney. In his initial evaluation Dr. Koprivica noted that Employee was having very profound postural restrictions attributable to his post-laminectomy syndrome. Dr. Koprivica assigned restrictions for Employee, specifically: (1) have flexibility to change positions between sitting, standing, and walking, (2) a maximum for captive sitting or captive standing of less than one hour (with flexibility), (3) limit walking to less than fifteen minutes as a maximum (with flexibility), (4) have flexibility of sitting whenever necessary, (5) avoid frequent or constant bending at the waist, pushing, pulling or twisting, and (6) avoid sustained or awkward postures of the lumbar spine, and avoid squatting, crawling, kneeling or climbing.[4] Dr. Koprivica opined in his evaluation that the severity of Employee's disability from the post-laminectomy syndrome, in isolation, was felt to have caused permanent total disability, but he would defer that issue to an appropriate vocational expert.

---

[4] He further recommended that Employee only occasionally lift or carry, and Employee should avoid exposure to whole body vibration or jarring.

5

A vocational rehabilitation evaluation was conducted by Mr. Phillip Eldred ("Mr. Eldred"). Mr. Eldred opined that "[Employee] has preexisting conditions, but it is the restrictions from the injury on April 12, 2014 that constitute a hinderance or obstacle to employment." Mr. Eldred opined that Employee could not return to less than sedentary work and identified no transferable skills for sedentary work. Mr. Eldred opined that Employee is "unemployable in the open labor market" and that "[Employee] is permanently and totally disabled as a result of his injury on April 12, 2014, in isolation." In support of his opinion, Mr. Eldred noted Employee's functional limitations, limited education and poor test results. Mr. Eldred stated that Employee would have problems being re-trained in a formal training program due to his constant pain, use of narcotic medications, and low academic test scores.

Appellants offered testimony that supported their position that Employee was employable in the open labor market. Kristine Skahan conducted a vocational rehabilitation evaluation on behalf of the Employer. Ms. Skahan concluded that while Employee's restrictions eliminated his past work and he "was not found to have transferable skills to work at the less than full-range of light work[,]" Employee "retains the ability to perform other work at less than a full-range of light [work] that would not require transferable skills."

The Administrative Law Judge ("ALJ") found Employee to be permanently and totally disabled due to a combination of Employee's April 12, 2014 work injury and his pre-existing disabilities. In finding permanent total disability, the ALJ found the testimony of Mr. Eldred and Dr. Koprivica particularly persuasive and compelling on that issue. The ALJ found Ms. Skahan less straightforward, but concluded that Ms. Skahan's

6

testimony also supported the ALJ's decision of permanent total disability. The ALJ made the following observations:

> The medical history in this case documents the severity of [Employee's] pre-existing disabilities as well as the disability from his primary occupational disease claim. Prior to the primary occupational disease claim, [Employee] underwent major surgery on his right knee, right shoulder, left shoulder, back, right wrist, and left wrist. The evidence clearly established that these conditions caused significant limitations and deficits prior to the primary occupational disease claim.

The ALJ also found Appellants responsible for Employee's future medical care.

Both Employee and SIF filed an "Application for Review" with the Commission asserting that the ALJ's award was erroneous for various reasons. The Commission issued its "Final Award Allowing Compensation" on October 22, 2020, noting that "**[n]o party disputed the [ALJ's] finding that [E]mployee is permanently and totally disabled**, and that [E]mployer is obligated to provide future medical treatment pursuant to § 287.140 RSMo." (Emphasis added.) The Commission modified the ALJ's Award as to the issue of the SIF's liability. The salient portion of the award was as follows:

> After careful consideration, we find Dr. Koprivica's initial opinion that [E]mployee's permanent and total disability resulted solely from the effects of [E]mployee's occupational disease injury with onset of April 12, 2014, constitutes the most credible evidence in the record on the issue of medical causation of [E]mployee's undisputed permanent and total disability. We do not consider Dr. Koprivica's additional alternative analyses inconsistent, but rather merely his effort to respond to [E]mployee's attorney's diligent questioning designed to anticipate and address every possible liability scenario under § 287.220.3 RSMo. We further rely on the opinion of vocational expert Phillip Eldred that medical restrictions resultant from [E]mployee's primary injury rendered him unable to compete for work in the open labor market. We conclude [E]mployee's fifty-eight hour a week job as a welder for [E]mployer from 2006 to 2014, frequently lifting fifty or more pounds, carrying, squatting and kneeling was the sole cause of his permanent and total disability.

This appeal followed.

7

**Discussion and Decision**

**Point I**

In their first point, Appellants argue that the Commission's award finding Employee permanently and totally disabled as a result of the April 12, 2014 injury in isolation is not supported by the facts found by the Commission. "A court may set aside the award, not because the [C]ommission failed to find facts which would support it, but because the [C]ommission found facts which would not support it. It must be an affirmative finding of facts which would make the award improper; facts inconsistent with the award." *Schlereth v. Aramark Uniform Services, Inc.*, 589 S.W.3d 645, 652 (Mo.App. E.D. 2019) (internal quotations and citation omitted).

Appellants' argument is that the Commission based its decision on the "initial opinions" of Dr. Koprivica and Mr. Eldred, who according to Appellants changed their minds. Appellants claim that Dr. Koprivica's opinion is dependent upon Mr. Eldred's report which is "incomplete and inaccurate" because the report cites Employee as having no prior disabilities. Appellants argue Dr. Koprivica and Mr. Eldred's opinions in their entirety point to permanent total disability against the SIF based on the combination of the 2014 injury and the pre-existing disabilities, not the last injury alone. Appellants' characterization of Dr. Koprivica's statement is inaccurate.

First, Dr. Koprivica opined in his evaluation that Employee had "very profound postural restrictions" attributable to Employee's post-laminectomy syndrome, in isolation, and that he felt that there was "potential" that Employee was permanently and totally disabled but he would "defer [that] issue to an appropriate vocational expert." The determination of a disability is not purely a medical question: substantial evidence of the

8

nature, cause and extent of a disability can be provided by the testimony of the claimant or other lay witnesses within the realm of lay understanding. *Grauberger v. Atlas Van Lines, Inc.*, 419 S.W.3d 795, 801 (Mo.App. S.D. 2013). In determining whether an employee can return to employment, an ALJ may consider the employee's education, ability to be retrained, and academic and vocational testing. *See id.* at 801-02 (finding "the finder of fact can consider evidence aside from physician testimony which bears on the claimant's suitability for a job" including a claimant's age and potential for retraining).

After receiving Mr. Eldred's vocational rehabilitation evaluation, Dr. Koprivica opined in an addendum that Employee is permanently and totally disabled based on the April 12-14, 2014 injury claim in isolation, in and of itself. Dr. Koprivica stated:

> [W]hen I authored [my May 28, 2015 Medical Evaluation Report], there was a question in my mind whether or not the severity of his post-laminectomy syndrome and those restrictions and limitations would result in [Employee] being totally disabled in isolation. I put in my report that I would need vocational input, which I didn't have at that time, but I said that potential existed.
>
> . . . .
>
> Subsequent to doing that report, I received a report from Mr. Eldred as the vocational expert; with that input, my conclusion was that [Employee], in fact, was totally disabled based on the primary injury in isolation.

Dr. Koprivica made an alternative opinion if the fact finder found Employee's permanent disability was not due to the primary injury; however, Dr. Koprivica stated in his addendum that "[i]t is with Mr. Eldred's **specific vocational information** that my opinion is that, in fact, [Employee] is permanently totally disabled based on the primary injury in isolation, in and of itself." (Emphasis added.)

As to the claim that Mr. Eldred changed his mind, he specifically noted in his vocational rehabilitation evaluation, after reviewing Employee's medical history, past medical treatment, and Dr. Koprivica's medical evaluation, that Employee "did have an impairment, but it was not vocationally disabling such as to constitute a hinderance or obstacle to employment *before* April 12, 2014." (Emphasis added.) Mr. Eldred explained what might have been construed as inconsistent testimony. In response to questioning regarding prior statements, the following colloquy occurred:

Q. . . . Your conclusion there that [Employee's] prior conditions were not vocationally disabling, that's not correct, is it?

A. Again, I was going on the fact that [Employee] had worked eight years in [Employee's] last position as a welder and telling me [Employee] was able to do that. The fact that [Employee] does have some problems, I did state that he did have an impairment, and that's what I meant by that. Yes.

Q. Okay. But your conclusion there is incorrect? In fact, as you've just told me, those conditions were vocationally disabling prior to April 12th of 2014, weren't they?

A. They had the potential of being so, yes, even though [Employee] was working in such a manner that it didn't keep [Employee] from working at [Employee's] particular job.

. . . .

Q. All right. If it is a fact that you are wrong factually on the basis that [Employee] didn't have a hindrance or obstacle to employment, and legally, in the sense that the law says that [Employee] did, would it be your opinion today with that information that [Employee] was permanently and totally disabled as a consequence of the preexisting conditions and [Employee's] April of 2014 injury?

A. Absolutely.

Mr. Eldred reiterated that all of the restrictions placed on Employee made Employee totally disabled. Mr. Eldred continued:

10

Q. Okay. Then going on to the next sentence, you read half of a sentence from Dr. Koprivica regarding the fact that some of [Employee's] pre-existent disabilities would contribute to those restrictions, but the rest of the sentence says that those restrictions listed above would be placed based on the post-laminectomy syndrome from April 2014 claim in isolation, correct?

A. Correct.

Q. So is it your understanding that those restrictions from Dr. Koprivica are from the last injury alone?

A. That's the way I took it.

Q. Okay. And when you ultimately rendered your opinion that [Employee] was disabled from the last injury alone, is it because of these restrictions?

A. Yes.

Thus, Mr. Eldred stated in his evaluation that while Employee had pre-existing conditions, it was the restrictions from the injury of April 12, 2014 that constituted a hinderance or obstacle to employment. While Appellants try to argue that Mr. Eldred assumed that Employee had no prior disabilities before his 2014 injury, this argument fails based on Mr. Eldred's evaluations and deposition testimony in which he referenced Employee's prior disabilities. Appellants also failed to acknowledge that, on cross-examination by the SIF attorney, Mr. Eldred testified that prior to the April 2014 injury Employee did not have any **permanent restrictions** from any treating physicians and that Employee had "profound postural restrictions" attributable to the post-laminectomy syndrome.

Mr. Eldred pointed out several times in his testimony that despite having some problems Employee had continued to work heavy labor eight years in his last position as a welder. Mr. Eldred testified that those post-laminectomy syndrome restrictions after

the April 2014 injury made him capable of less sedentary work. Mr. Eldred confirmed with his testimony that Dr. Koprivica acknowledged in Dr. Koprivica's report that some of Employee's disabilities would contribute to those restrictions, but that profound postural restrictions would be based on the post-laminectomy syndrome from the April 2014 injury in isolation.

### The Commission's Findings

The Commission found that Dr. Koprivica's initial opinion that Employee's permanent and total disability resulted solely from the effects of the post-laminectomy syndrome from the April 2014 injury was the most credible medical causation evidence in the record. Additionally, the Commission did not consider Dr. Koprivica's additional alternative analysis inconsistent, but rather an effort to respond to Employee's attorney's diligent questioning designed to anticipate and address every possible liability scenario under section 287.220.3 RSMo. This Court also defers to the Commission's determinations as to credibility of witnesses and the weight given to conflicting evidence. *Annayeva*, 597 S.W.3d at 198.

The Commission adopted the findings and conclusions of the ALJ to the extent they were consistent with the findings, conclusions, decision and modifications of the Commission. The ALJ found Employee credible and that his testimony was "genuine, honest, reliable and trustworthy." Employee testified that he had returned to full-time heavy labor employment after each of his six prior major surgeries, but that he was unable to return to any employment after this last final back surgery because he was in too much pain. Employee did not think he could perform any of the jobs he had ever held in his vocational history because of the disability from his last work injury.

Dr. Koprivica and Mr. Eldred's opinions are consistent and support the Commission's decision. Employee's testimony was fully consistent with and supportive of the Commission's decision as well. The Commission's award finding Employee permanently and totally disabled as a result of the April 12, 2014 injury in isolation is supported by the facts found by the Commission. Point I is denied.

**Point II**

Appellants, in their second point, argue that the Commission's award "is not supported by competent and substantial evidence" in that the Commission based its decision on the opinions of Dr. Koprivica and Mr. Eldred, who Appellants again claim changed their opinions regarding the causation of the permanent total disability from the April 2014 injury in isolation to a combination of the April 2014 injury and Employee's pre-existing disabilities.

A challenge based on a lack of competent and substantial evidence "succeeds only in the demonstrated *absence* of sufficient competent substantial evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is irrelevant." ***Robinson v. Loxcreen Company, Inc.***, 571 S.W.3d 247, 249 (Mo.App. S.D. 2019) (internal quotations and citation omitted). "Sufficient competent evidence is a minimum threshold and can be satisfied by the testimony of one witness, even if there is contradictory testimony from other witnesses." ***Id.*** (internal quotations and citation omitted).

Here, Appellants argue that the Commission based its decision on the "initial opinions" of Dr. Koprivica and Mr. Eldred who according to Appellants changed their opinions. They again argue that Dr. Koprivica and Mr. Eldred's opinions in their entirety

13

point to permanent total disability against the SIF based on the combination of the 2014 injury and the pre-existing disabilities, not the last injury alone. We have addressed the testimony of Dr. Koprivica and Mr. Eldred in Point I. Their testimony supports the Commission's findings and provides competent substantial evidence that Employee's permanent total disability resulted solely from the effects of Employee's occupational disease injury on April 12, 2014. As the testimony quoted indicates, neither witness ultimately changed his opinion to support Appellants' claim that pre-existing disabilities were responsible for Employee's total disability.

Appellants also challenge the Commission's finding by offering what Appellants perceive as Employee's contradictory testimony. Employee unequivocally testified that he had returned to full-time heavy labor employment after each of his six prior major surgeries, but that he was unable to return to any employment after this last final back surgery because he was in too much pain. Employee did not think he could perform any of the jobs he had ever held in his vocational history because of the disability from this last work injury. The Commission found Employee to be credible. Employee's testimony further provides competent substantial evidence of his permanent total disability after the last injury.

The evidence was sufficient for the Commission to reasonably believe that Employee was permanently and totally disabled based on the effects of the 2014 work injury in isolation. If a claimant's last injury, in and of itself, rendered him permanently and totally disabled, then the SIF has no liability and the employer is responsible for the entire amount. *Atchison v. Missouri State Treasurer*, 603 S.W.3d 719, 725 n.3

14

(Mo.App. S.D. 2020).  Accordingly, the Commission did not err in determining that Employee was permanently and totally disabled as a result of the 2014 work injury alone.

Appellants' second point is denied.  The Commission's award is affirmed.


Nancy Steffen Rahmeyer, P.J. – Opinion Author

William W. Francis, Jr., J. – Concurs

Jack A. L. Goodman, J. – Concurs